# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

HERMAN NELSON, JOEL DECATUR, )
ANDRE LAWSON, and ERNEST CARTER, )
                                       )
                 Plaintiffs, )
                                       )      CASE NO. 07 C 2991
       v. )
                                        )      Judge Robert M. Dow, Jr.
MICHAEL CHERTOFF, Secretary of the )
Department of Homeland Security, )
                                       )
                 Defendant. )

## MEMORANDUM OPINION AND ORDER

Defendant Michael Chertoff, Secretary of the Department of Homeland Security, has filed a motion to sever and to dismiss Plaintiffs' amended complaint [17]. Having reviewed the motion and the parties' briefs, the Court grants Defendant's motion to dismiss counts five and six but denies without prejudice Defendant's motion to sever the claims of all Plaintiffs.

**I.     Background**

Plaintiffs Herman Nelson, Andre Lawson, Ernest Carter, and Joel Decatur all are current or former employees in the Chicago field office of the Federal Air Marshal Service (also referred to as "FAMS"). Am. Compl., ¶ 1-2. Plaintiffs' amended complaint contains six counts: a discrimination claim brought pursuant to Title VII of the Civil Rights Act of 1964 42 U.S.C. §§ 2000(e) *et seq.* (Count I); a hostile work environment claim brought pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621-634 (Count II); an ADEA discrimination claim (Count III); a combined Title VII and ADEA retaliation claim (Count IV); a constitutional claim brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (Count V); and a criminal witness tampering claim brought under 18 U.S.C. § 1512(b)(1) and (2)(A) (Count VI).

The Federal Air Marshal Service is a division of the Transportation Security Administration, an agency within the Department of Homeland Security. Defendant Michael Chertoff, the Secretary of the Department of Homeland Security, is being sued in his official capacity as director of the Department of Homeland Security.

Plaintiffs Nelson and Carter are both African-American and over the age of forty. Am. Compl., ¶ 23, 27. They began working in the Chicago field office in 2002 and still work there.[1] Pl.'s Resp. to Motion to Sever and Dismiss, ¶ 2-3. Plaintiff Nelson alleges that Defendant discriminated against him based on his age and race when he was not promoted to an Assistant to the Special Agent in Charge in either the Atlanta, Georgia or Dallas, Texas field offices. Am. Compl., ¶ 23. Plaintiff Carter alleges that Defendant discriminated against him based on his age and race when he was not promoted within the Chicago field office and three younger, white men with less experience were promoted instead of him. Am. Compl., ¶ 27. Carter also contends that Defendant retaliated against him by removing him from an acting supervisory position after he complained to an Equal Employment Office (EEO). *Id*.

Plaintiff Lawson, also African-American and over the age of forty, worked at the Chicago field office from 2003 until March 2005. Pl.'s Resp., ¶ 4. Lawson alleges that Defendant discriminated against him based on his race when Lawson was discharged. Am. Compl., ¶ 24. He bases his allegations on the circumstances of his discharge and on a conversation, recounted by Plaintiff Decatur, during which Lawson's supervisors allegedly used a racial slur in reference to him. *Id*. ¶ 24-25.

Plaintiff Joe Decatur worked at the Chicago field office beginning in 2002 through May 2006. Pl.'s Resp., ¶ 5. Decatur alleges that Defendant retaliated against him after he filed a

---

[1] All dates relating to periods of employment for Plaintiffs and their supervisors are contained in the Plaintiffs' response to Defendant's motion to sever and dismiss and are not contained in the amended complaint.

2

complaint with the Office of Professional Responsibilities that stated that a federal air marshal named "Murray" had told him that two of his supervisors – Frank Tucci and Robert Fanter – used a racial slur when talking about Plaintiff Lawson. Am. Compl., ¶ 26. Following Decatur's complaint, the Office of Professional Responsibilities conducted an investigation. *Id*. Air marshal Murray later denied overhearing a racial slur, and Plaintiff Decatur was terminated for conduct unbecoming a federal air marshal. *Id*.

Plaintiffs' amended complaint names five Caucasian men who comprised a "supervisory group of overseers * * * for the Career Board of the Chicago Federal Air Marshals": Michael DeMarte, Howard Jordan, Scott Ralston, Frank Tucci, and Robert Fanter. Am. Compl., ¶ 5-9. From August 2002 to August 2005, Plaintiffs' head supervisor was Special Agent in Charge Michael DeMarte. Pl.'s Resp., ¶ 7. Then, starting in August 2005, Howard Jordan was the Special Agent in Charge. *Id*., ¶ 8. Prior to August 2005, Jordan had been an Assistant to the Special Agent in Charge. Am. Compl., ¶ 6. Scott Ralston also acted intermittently as Special Agent in Charge during this period. Pl.'s Resp., ¶ 9. Beginning in 2002, Frank Tucci and Robert Fanter were Assistants to the Special Agent in Charge. *Id*., ¶ 10-11. According to Plaintiffs' allegations, all of these men played a role in deciding which air marshals under their supervision should be promoted. Am. Compl., ¶ 10-11. Moreover, Plaintiffs allege that in March 2006 these supervisors, acting alone or in concert with one another, issued a directive to "one or all of the squads in the Chicago Field Office * * * stating that 'anyone who would testify on behalf of any FAM in connection with any complaint or otherwise, had to first inform his supervisor, and that said decision to testify [ ] would not be viewed upon favorably by management.'" Am. Compl., ¶ 47.

Plaintiffs filed their amended complaint on October 10, 2007. Defendant moved to dismiss the constitutional claim brought pursuant to *Bivens v. Six Unknown Federal Agents*, 403

U.S. 388 (1970) (Count V) and the criminal witness tampering claim brought under 18 U.S.C. § 1512(b)(1) and (2)(A) (Count VI), and also have asked the Court to sever the claims of the individual Plaintiffs.

## II. Discussion

### A. Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic*, 127 S.Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

This Court also must determine which facts are to be evaluated as part of the "pleadings" for consideration under a Rule 12(b)(6) motion. For purposes of a Rule 12(b)(6) motion, the Seventh Circuit has held that the pleadings "consist generally of the complaint, any exhibits attached to, and supporting briefs." *Thompson v. Ill. Dept. of Professional Regulations*, 300 F.3d

4

750, 753 (7th Cir. 2002). More specifically, "the facts asserted in the memorandum filed in opposition to the motion to dismiss, but not contained in the complaint, are relevant to the extent that they could be proved consistent with the allegations." *Evans v. U.S. Postal Service*, 428 F. Supp. 2d 802, 805 (N.D. Ill. 2006) (quoting *Dausch v. Ryske*, 52 F.3d 1425, 1428 n. 3 (7th Cir. 1994). Thus, this Court will consider facts presented in Plaintiffs' response to Defendant's motion to sever and dismiss as part of the "pleadings" if those facts are consistent with the allegations in the complaint.

    *1.*  Bivens *Action (Count V)*

Plaintiffs allege that their supervisors engaged in retaliatory conduct in violation of Plaintiffs' Fifth Amendment due process rights. Presumably, Plaintiffs bring their due process claim pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in which the Supreme Court held that damages are recoverable for injuries suffered as a result of constitutional violations by federal agents. Although *Bivens* arose in the context of the Fourth Amendment, the Supreme Court since has recognized a *Bivens* action under the Fifth Amendment's equal protection component of the Due Process Clause. See *Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (implying *Bivens* action under the Fifth Amendment's equal protection component of the Due Process Clause in the context of alleged discrimination in employment). Plaintiffs have not offered any legal or factual arguments as to the propriety of their *Bivens* claim. They merely allege that Defendant's conduct bordered on "criminal activity by members of the Executive branch of government." Pl.'s Resp., ¶ 24.

Defendant argues that Plaintiffs' due process claim should be dismissed for several reasons. First, Defendant contends that to the extent that Plaintiffs are suing Defendant Chertoff in his official capacity as the Secretary of the Department of Homeland Security, Defendant's claim should be dismissed because neither the United States nor its agencies have waived

5

sovereign immunity to *Bivens* claims. To the extent that they are suing Defendant Chertoff in his individual capacity, Defendant argues that the claim should be dismissed because the amended complaint does not contain any allegation that Chertoff was personally involved in any deprivation of Plaintiffs' constitutional rights. Finally, Defendant submits that Title VII and other discrimination statutes, such as the ADEA, are the exclusive remedy available to federal employees for allegations of employment discrimination.

Although Plaintiffs have attempted to assert a claim directly under constitutional equal protection principles based on the due process clause of the Fifth Amendment, that avenue was foreclosed by the Supreme Court's decision in *Brown v. General Services Administration,* 425 U.S. 820 (1976). *Brown* squarely holds that "the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment." 425 U.S. at 835; see also *Mlynczak v. Bodman*, 442 F.3d 1050, 1056-57 (7th Cir. 2006). As such, "it is clear * * * that a federal employee is limited to the remedies for discrimination in the workplace provided by Congress in Title VII * * *." *Patel v. Derwinski*, 778 F. Supp. 1450, 1457 (N.D. Ill. 1991); see also *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006) ("Federal employees must rely upon Title VII and other federal antidiscrimination statutes like the ADEA that apply to the federal government as the exclusive remedy for combating illegal job discrimination."). Thus, Plaintiffs in this case cannot allege a due process violation for the retaliatory conduct of their employers. They are limited to their claims under the Civil Rights Act and ADEA. Because the antidiscrimination statutes provide the only remedy for Plaintiffs' claims, the Court need not address Defendant's arguments regarding sovereign immunity and vicarious liability.

    2.    *Criminal Witness Tampering Claim (Count VI)*

Defendant argues that Plaintiffs' criminal witness tampering claim should be dismissed because the statute under which Plaintiffs have sued does not provide a civil remedy. As with

their *Bivens* claim, Plaintiffs have not provided any legal support for their witness tampering claim, merely asserting that Defendant's conduct bordered on "criminal activity by members of the Executive branch of government." Pl.'s Resp., ¶ 24.

Plaintiffs' witness tampering claim is brought pursuant to 18 U.S.C. § 1512(b)(1) and (2)(A). Section 1512(b) provides in relevant part:

> Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> > (1) influence, delay, or prevent the testimony of any person in an official proceeding;
> >
> > (2) cause or induce any person to—
> >
> > > (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
>
> * * *
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C.A. § 1512(b)(1) and (2)(A). The statute itself does not provide for a civil remedy. It is well settled that criminal statutes generally do not provide for private civil causes of action. See generally *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) (noting that Supreme Court has rarely implied a private right of action under a criminal statute); see also *Perkins v. Lewis*, 2007 WL 1118723, at *7 (C.D. Ill. April 10, 2007); *Bajorat v. Columbia-Breckenridge Development Corp.*, 944 F. Supp. 1371, 1377-78 (N.D. Ill. 1996). Plaintiffs have not cited, nor has this Court found, any decision holding that the criminal witness tampering statute carries an implied private right of action. See *Chavin v. Cole Taylor Bank*, 2007 WL 528374, at *2 (N.D. Ill. February 14, 2007) (noting that Title 18 contains criminal statutes and finding that it had no basis for inferring a private right of action). Therefore, Plaintiffs, undeniably private parties, may not bring an

action under 18 U.S.C. § 1512 (b)(1) and (2)(A), and their criminal witness tampering claim must be dismissed.

**B.     Motion to Sever**

Defendant also asks the Court to sever the Plaintiffs' employment discrimination claims into separate actions. Defendant argues that Plaintiffs' claims do not arise out of the same transaction or occurrence and involve separate and distinct employment decisions made by different decision makers at different times. Defendant also argues that Plaintiffs claims do not involve common questions of law or fact. Plaintiffs respond that there is a logical relationship between their claims in that they allege an office-wide policy of discrimination.

Rule 20 of the Federal Rules of Civil Procedure permits parties to join as plaintiffs if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20. When parties are misjoined, Rule 21 authorizes a court, either on its own or on a motion, to "sever any claim against a party," and to, "on just terms, add or drop a party." Fed. R. Civ. P. 21. Thus, for joinder to be proper, plaintiffs' claims must arise out of the same transaction or occurrence or series of transactions or occurrences, and there must be a question of law or fact common to all the plaintiffs' claims. See *Bailey v. N. Trust Co.*, 196 F.R.D. 513, 515 (N. D. Ill. 2000); see *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).

Federal policy favors joinder, for the purpose of Rule 20 is "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." See *Bailey*, 196 F.R.D. at 515. "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724

(1966). The district court has wide discretion when deciding whether joinder of parties is proper. See *Gorence v. Eagle Food Ctrs., Inc.*, 1996 WL 734955, at *3 (N.D. Ill. Dec. 19, 1996).

If plaintiffs allege discriminatory incidents that arise out of different employment decisions made by different people at different times, then those incidents do not arise out of the same transaction or occurrence. See *Bailey*, 196 F.R.D. at 516; *Maclin v. Northern Telecom, Inc.,* 1996 WL 495558, at *7 (N.D. Ill. Aug. 28, 1996). However, if plaintiffs allege a company-wide policy of discrimination, then their claims do arise out of the same series of transactions or occurrences. *Mosley,* 497 F.2d at 1333-1334. A hostile work environment claim is in effect alleging a policy of discrimination, and this is sufficient to establish a single transaction or occurrence. See *Smith v. Northeastern Illinois University,* 2002 WL 377725, at *3 (N.D. Ill. February 28, 2002). Additionally, an alleged company-wide policy of racial discrimination is sufficient to establish a common question of fact, even if the plaintiffs all suffered different effects of the alleged discrimination policy. *Mosley,* 497 F.2d at 1334. A hostile work environment claim can also present a common question of fact for the purposes of Rule 20(b). *Smith,* 2002 WL 377725, at *4.

In determining whether a particular factual situation constitutes a single transaction or occurrence, courts employ a case-by-case approach. See *Mosley,* 497 F.2d at 333 (8th Cir. 1974); *Bailey,* 196 F.R.D. at 515. Courts have considered several different factors when considering whether discrimination claims arise from the same transaction or occurrence. These include:

> the time period during which the alleged acts occurred, whether the acts of discrimination are related, whether there were differing types of adverse employment actions, whether more than one type of discrimination is alleged, whether the same supervisors were involved, whether employees worked in the same department, whether employees were at different geographical locations, and whether a company-wide policy is alleged.

*Berry v. Illinois Dept. of Human Servs.*, 2001 WL 111035, at *17 (N.D. Ill. Feb. 2, 2001).

Defendant contends that Plaintiffs' cases arise under four different and unrelated factual scenarios. However, application of the numerous factors favors keeping Plaintiffs' claims together, at least at this early stage of the case. First, the time periods during which the alleged acts occurred are quite similar for each Plaintiff, with the majority of each Plaintiff's allegations occurring during between 2002 and 2006. Next, although two types of discrimination are alleged (age and race), three of the four Plaintiffs are asserting both types of discrimination. The claims of Plaintiffs Lawson and Decatur involve the same incident which concerned two of the five supervisors. Am. Compl., ¶ 24-26. Plaintiffs Carter and Nelson allege that the five supervisors engaged in discriminatory conduct in not recommending them for promotions. Am. Compl., ¶ 23, 27. Plaintiffs Decatur and Carter both allege that they were retaliated against after filing complaints about discriminatory conduct in the Chicago Field Office. Am. Compl., ¶ 26-27. The amended complaint also contains allegations that there was an office-wide policy of discrimination, Am. Compl., ¶ 46, and all Plaintiffs allege a hostile work environment claim. Furthermore, the amended complaint names the same supervisors (Michael DeMarte, Howard Jordan, Scott Ralston, Frank Tucci, and Robert Fanter) as being responsible for the discrimination. Finally, all four Plaintiffs worked in the same position within the same office. Based on these considerations, and the fact that little to no discovery has been conducted (at least that the Court is aware of), the Court declines to sever Plaintiffs' claims at this time.

Defendant also argues that the Court should sever the claims under Rule 42(b) because trying all of the claims together would be prejudicial to Defendant and would confuse the jury. Rule 42(b) allows for a court to order separate trials for separate claims "for convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Extreme prejudice to a defendant resulting from the joint trial of plaintiffs' claims along with the concern of jury

confusion may outweigh concerns of judicial economy. *Bailey*, 196 F.R.D. at 518. The fact that a jury may need to keep every plaintiff's employment history and discrimination allegations separate also could result in jury confusion. *Bailey*, 196 F.R.D. at 518; *Moorhouse v. Boeing Company*, 501 F. Supp. 390, 392 (D.C. Pa. 1980). However, prejudice to the defendant may not be as great when a hostile work environment claim is raised because "separate trials would require a significant amount of overlapping testimony and evidence for each plaintiff's separate case." *Smith,* 2002 WL 377725, at *5. Where a hostile work environment claim is raised and the plaintiffs' claims are factually related enough so as to limit jury confusion, a joint trial may be proper in that concerns of economy and convenience will outweigh concerns of prejudice to the defendant. *Id*. (finding claims of four plaintiffs, one of which was a hostile work environment claim, to be related enough so as not to confuse a jury).

In this case, the four Plaintiffs allege the presence of a hostile work environment. As previously mentioned, Plaintiffs all work in the same office in Chicago in the same position and allege that the same five supervisors engaged in discriminatory conduct. On the record as it now stands, it appears that there would be a great deal of overlapping testimony and evidence in each trial if the motion to sever was granted and separate trials were held. With respect to the claims of Plaintiffs Decatur and Lawson, the same incident allegedly is at issue, and thus essentially the same factual questions would need to be decided by two juries instead of one. As was the case in *Smith*, the fact that there would be a large amount of overlapping testimony in these cases cuts against Defendant's arguments of prejudice.

At this early stage of the case, the interests of economy and convenience appear to outweigh the concern of prejudice to Defendant in that holding four separate trials would require four juries to hear many of the same facts from essentially the same witnesses. Also, while Plaintiffs' claims do involve separate employment histories and facts, their claims appear to be

relatively similar.  Furthermore, as with the Court's analysis of the motion pursuant to Rule 21, the "newness" of the case militates against severance, given that little to no discovery has been conducted and the factual issues have not been fleshed out.  Therefore, at this time, the Court declines to sever Plaintiffs' claims under Rule 42(b), but emphasizes that the motion to sever is denied without prejudice.

**III.    Conclusion**

For the foregoing reasons, the Court grants Defendant's motion to dismiss counts five and six [17] and denies without prejudice Defendant's motion to sever Plaintiffs' claims [17].

Dated:  September 10, 2008            _____
                                       Robert M. Dow, Jr.
                                       United States District Judge